IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CARL THOMAS,<br> *Plaintiff*,<br><br>v.<br><br>ECOLOGY SERVICES ANNE ARUNDEL COUNTY, LLC,<br> *Defendant* | Civil Action No. 23-cv-02424-ABA |

### MEMORANDUM OPINION

On August 4, 2023, Plaintiff Carl Thomas was terminated from his position as an Operations Manager at Defendant Ecology Services Anne Arundel County ("Ecology"). The parties have completed discovery, and Ecology has filed a motion for summary judgment. Plaintiff did not oppose the motion. For the reasons that follow, the Court will grant Ecology's motion, and judgment will be entered in its favor.

### I. Facts

Because Defendant Ecology has moved for summary judgment, the Court recites the facts in the light most favorable to Plaintiff Carl Thomas. *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

### A. Background

Defendant Ecology is a "trash collection company that provides refuse, recycling, and yard waste collection services to residents in various parts of Anne Arundel County." ECF No. 36-3 ¶ 3. Defendant employs CDL-licensed drivers to collect curbside waste, as well as management personnel to operate its facility in Pasadena, Maryland ("Pasadena Yard"). *Id.* ¶¶ 3—5.

Plaintiff Carl Thomas was employed by Ecology intermittently from 2008 to 2023. *Id.* ¶ 6. Plaintiff's last period of employment with Ecology began in May 2021 and continued until he was terminated on August 4, 2023. *Id.* Over this time, Plaintiff was the Operations Manager of the Pasadena Yard. *Id.* ¶¶ 6—7. Plaintiffs job duties included, among other things, "opening the yard each day, taking inventory of available trucks and drivers, scheduling employees, assigning drivers and helpers to trucks and routes, supervising employees, approving leave requests, preparing a daily manning report, and reviewing payroll reports for accuracy before the report was forwarded to the payroll department for processing." ECF No. 36-16 ¶ 4.

The parties dispute the extent of Plaintiff's duties relating to payroll. Though Ecology at times characterizes Plaintiff's job duties as central to payroll administration, which Plaintiff denies, *see, e.g.*, ECF No. 36-18 at 7 (Tr. 58:1—59:14), it is undisputed that Plaintiff reviewed payroll reports for accuracy after the Pasadena Yard Office Manager completed such reports. *See* ECF No. 36-3 ¶ 8; ECF No. 36-18 at 7 (Tr. 59:5—13) (confirming that Plaintiff "take[s] a look at payroll" and informs the Office Manager "where she made mistakes.").

**B. Plaintiff's Payroll Complaints**

On Monday, July 24, 2023, a driver named Anthony Haddaway complained to Plaintiff that he was working overtime hours that he had not been paid for. ECF No. 1 ¶ 14; ECF No. 36-18 at 8 (Tr. 74:14—75:22).[1] Another driver, Marvin Lee, had also complained to Plaintiff for not receiving overtime pay. ECF No. 36-18 at 12 (Tr. 95:12—

---

[1] References to page numbers of filings (not transcript pages) herein refer to the ECF pagination in the header of the parties' filings. Those page numbers do not necessarily align with the documents' original page numbers.

96:12). After the complaints, Plaintiff "kept a very close eye" on the drivers' hours and concluded that both worked over 40 hours during the week of July 24. *Id.* at 9, 11—12 (Tr. 77:3—77:14, 90:17—91:16, 96:13—96:18). This was based solely on his personal observations of the employees. *Id.*

In response to the complaints and his personal observations, Plaintiff alleged that, on Saturday, July 29, 2023, he reviewed a copy of the payroll report and concluded that neither Haddaway nor Lee were being compensated for overtime hours. ECF No. 1 ¶¶ 15—17; ECF No. 36-18 at 9 (Tr. 77:10—77:18). Unbeknownst to Plaintiff, however, neither Haddaway nor Lee were entitled to overtime pay for the week of July 24 because, once their hours were adjusted for breaks, Haddaway and Lee worked 33.3 and 38.6 hours, respectively. *See* ECF No. 36-14; ECF No. 36-6 ¶¶ 25—27.

What followed is largely disputed. Plaintiff alleges that following his review of the payroll report, he sent an email to Human Resources Manager Jessica Graham and Vice President for Operations Mel Morales notifying them that the payroll report was incorrect because it did not account for Haddaway and Lee's overtime hours. ECF No. 1 ¶¶ 18—20; ECF No. 36-18 at 9, 11—12 (Tr. 77:19—78:11, 91:19—93:4). Ecology contends that "no such email ever existed." ECF No. 36-1 at 9. In support, Ecology first points out that Plaintiff was unable to produce the alleged email during discovery, *see* ECF No. 36-24 (RFP No. 11, 13), which Plaintiff asserts was because he did not have access to his company email after his termination. ECF No. 36-18 at 4—5, 12 (Tr. 20:16—21:11, 93:19—94:3). But Defendants "preserved Plaintiff's entire email account upon termination of his employment." ECF No. 36-6 ¶ 18. And having searched in that account, Ecology was unable to find any email sent on July 29 "or any other email sent by Plaintiff asserting that the July 24-29 payroll report did not include overtime hours

3

worked by Haddaway and Lee." *Id.* ¶¶ 19, 23. *See also* ECF No. 36-12. Further, neither Ms. Graham nor Mr. Morales's email account contained an email from Plaintiff on July 29 regarding overtime pay. ECF No. 36-6 ¶ 24; ECF No. 36-13; ECF 36-16 ¶ 8.

Instead, Plaintiff sent "a much different email" on July 29 to Ms. Graham, Mr. Morales, Office Manager Michelle Fox, and Ecology owners Pete and Tim Osborne. ECF No. 36-1 at 9; ECF No. 36-6 ¶¶ 12, 13; ECF No. 36-21 ¶¶ 4, 8; ECF No. 36-16 ¶¶ 5, 9. In that email, which *is* in the record, Plaintiff "asserted that the July 24-29 payroll report for the Pasadena Yard recorded several employees as working on July 24, when, in fact, they did not work that day."[2] ECF No. 36-6 ¶ 12; ECF No. 36-16 ¶ 5; ECF No. 36-21 ¶ 6. Plaintiff attached the July 24-29 payroll report and annotated the report indicating who was paid but not present on Monday, July 24. ECF No. 36-6 ¶ 13. *See also* ECF No. 36-8 at 2—6. The email states:

> GM. This is getting out of hand with [Office Manager, Kerry Wellington]. Every week I have to change payroll and yes I have reported her to HR and she continue to make these mistakes. Maybe HR never sa to her. When I confronting her she states Corporate clean up the mistakes not her job. This lady clearly told wrong information. Company wishes to make money not give it away.

ECF No. 36-8 at 2 (errors in original).

Unlike the alleged email regarding overtime pay, this email *was* found in Plaintiff's preserved email account, as well as the email accounts of Morales and Graham. *See* ECF No. 36-6 ¶¶ 19, 24; ECF No. 36-16 ¶ 8; *see also* ECF No. 36-12. Moreover, though the Complaint does not mention whether Plaintiff sent an email on

---

[2] The pay for individuals who had not worked on July 24 was previously approved by management. *See* ECF No. 36-21 ¶¶ 5—7.

July 29 regarding overpayment of employees, Plaintiff testified that he thought he sent "another" email about "guys [that] got paid that didn't work." ECF No. 36-18 at 12 (Tr. 94:4—94:12).

Following Plaintiff's email, Ms. Graham immediately called him and informed him to not "to concern [himself] with payroll." ECF No. 36-18 at 9 (Tr. 77:21—78:3); ECF No. 1 ¶¶ 22—26. Plaintiff also claimed that he called Mr. Morales on Monday, July 31, regarding the payroll issue. ECF No. 36-18 at 9, 11—12 (Tr. 78:7—78:11, 92:13—93:4, 95:6—95:11); ECF No. 1 ¶¶ 27—28. Mr. Morales informed Plaintiff that he would "check into it." ECF No. 1 ¶ 28. Both Morales and Graham contend that these communications concerned Plaintiff's email regarding overpaying employees, not regarding a failure to pay overtime. *See* ECF No. 36-21 ¶ 7; ECF No. 36-16 ¶ 9.

### C. Plaintiff's Termination

Around the same time that Plaintiff sent (at least one) email to management regarding payroll, "Ecology became aware of various serious transgressions that Plaintiff had committed" and decided to terminate his employment. ECF No. 36-3 ¶¶ 19, 26. Ecology learned that Plaintiff had been "improperly permitting employees who had exhausted their personal and sick days to use vacation days at the last minute," in contravention of company policies and the collective bargaining agreement. ECF No. 36-3 ¶ 24; *see also* ECF No. 36-5 at 6. And on August 1, Ecology learned that Plaintiff rehired an individual who had failed a background check, also in contravention of company policy. ECF No. 36-3 ¶ 25; ECF No. 36-6 ¶ 30.

Ecology also learned that Plaintiff had been awarding himself extra pay to which he was not entitled. ECF No. 36-3 ¶ 20; ECF No. 36-16 ¶ 10. This occurred after Mr. Morales informed him that he was not entitled to this extra pay. ECF No. 36-16 ¶ 12.

Ultimately, Mr. Osborne and Mr. Morales concluded that "Plaintiff's action in awarding himself extra pay was unethical . . . and amounted to theft." ECF No. 36-3 ¶ 23; ECF No. 36-16 ¶ 14. This, in conjunction with "Plaintiff's multiple transgressions," led Mr. Osborne to terminate Plaintiff's employment, effective August 4, 2023. ECF No. 36-3 ¶ 26.

### D. This Case

Just over one month after being terminated, Plaintiff filed this case, alleging that he had been wrongfully terminated in violation of the Fair Labor Standards Act ("FLSA"). *See* ECF No. 1 ¶ 38 (citing 29 U.S.C. § 215(a)(3)).[3] Plaintiff alleged that he "engaged in protected activity" by "fil[ing] a complaint" regarding Anthony Haddaway not being paid for overtime work, in violation of the FLSA. *Id.* ¶ 39. Plaintiff further alleged that he was terminated "solely because [he] made several complaints to Defendant's management about the Defendant's violation of the FLSA's overtime provisions." *Id.* ¶ 40.

On January 24, 2025, following the close of discovery, Ecology moved for summary judgment on two grounds. First, Defendant argues that there is no evidence to support the allegation that Plaintiff engaged in any activity protected by the FLSA. ECF No. 36-1 at 18—25. Second, Defendant argues that, even if Plaintiff engaged in protected activity, the undisputed evidence establishes that the termination was for entirely legitimate non-retaliatory reasons. *Id.* at 26—29. Plaintiff did not file an opposition to the motion.

---

[3] Plaintiff was represented by counsel when he filed the complaint. Counsel later withdrew from the representation. ECF Nos. 19 (motion), 20 (order). Since July 2024 Mr. Thomas has been proceeding *pro se*.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and when the nonmovant bears "the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with "sufficient evidence . . . for a jury to return a verdict for that party," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587—88.

## III. Discussion

The FLSA prohibits a covered employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint . . . under or related to [the FLSA's provisions]." 29 U.S.C. § 215(a)(3). "The framework for proving retaliation under the FLSA is the same *McDonnell Douglas* scheme as is used in Title VII cases." *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 778 (D. Md. 2014). Thus, the plaintiff has the initial burden to assert a *prima facie* case

of retaliation under the FLSA by demonstrating that the plaintiff "(1) engaged in an activity protected by the FLSA, (2) . . . suffered an adverse action by the employer subsequent to or contemporaneous with the protected activity, and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Id.* (citing *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (collecting cases)). If the plaintiff meets that initial burden, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment action." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). If the employer meets that burden, the burden shifts back to the plaintiff to "demonstrate that the defendant's proffered reason is pretextual." *Id.*

As noted above, Ecology argues it is entitled to summary judgment because (1) Plaintiff cannot establish a *prima facie* case, as there is "no probative evidence . . . that he engaged in a protected activity" under the FLSA and (2) even if he did, he cannot "prove that his protected activity was the . . . cause of the challenged adverse action" under the latter two prongs of *McDonnell Douglas*. *Id.* at 6, 26. This court will address each argument in turn.

### A. There is no record evidence that Plaintiff engaged in protected activity under the FLSA

As noted, when an employee makes a complaint "under or related to" the FLSA's substantive provisions, the Act's anti-retaliation provision makes it unlawful for an employer to discharge or otherwise discriminate against the employee for making such a complaint. 29 U.S.C. § 215(a)(3). A "complaint," for purposes of the anti-retaliation provision, may be oral or written so long as it provides "fair notice" to the employer. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011).

Intracompany complaints can meet this standard. *Minor v. Bostwick Lab'ys, Inc.*, 669 F.3d 428, 439 (4th Cir. 2012). But not "every instance of an employee 'letting off steam' to his employer constitutes protected activity." *Minor*, 669 F.3d at 439 (quoting *Kasten*, 563 U.S. at 14). Rather, a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* (quoting *Kasten*, 563 U.S. at 14).

And for a complaint to sufficiently assert FLSA-protected rights so as to constitute protected activity, it must allege that a covered employer failed to pay minimum wage or overtime pay or otherwise engage in conduct that violates the statute. *See Trejo v. Ryman Hosp'y Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (explaining that section 206 of the FLSA "requires the payment of a minimum wage," and § 207 "limits the maximum working hours an employee may work without receiving overtime compensation"). Failure to do so is fatal to a *prima facie* retaliation case. *Cf. Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 260 (4th Cir. 1998) (in Title VII case, concluding that the plaintiff, "as a matter of law, did not engage in protected . . . activity and, therefore, did not establish a prima facie case of retaliatory discharge.").

Here, Plaintiff's FLSA retaliation claim fails because there is no evidence in the record that he "file[d] a complaint" alleging violations of the FLSA's overtime provision. 29 U.S.C. § 215(a)(3). To avoid summary judgment, Plaintiff is required to put forth direct evidence to create a genuine dispute as to whether he did so. *See Matushita*, 475 U.S. at 586 ("When the moving party has carried its burden . . . , the nonmoving party

9

must come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

Plaintiff's claim is that he submitted a written complaint, by email, regarding a failure to pay overtime on a particular week to certain employees. But the undisputed record establishes that the only email that Plaintiff sent on July 29 concerned *over*payment of employees, not a failure to pay overtime as Plaintiff alleged. *See* ECF No. 36-12; ECF No. 36-13. Although Plaintiff himself lacks access to his Ecology emails, Ecology here has searched for and produced any potentially relevant emails. Not only is there no email in the record in which Plaintiff complained about a failure to pay overtime, but the record establishes that the complaint he *did* make on July 29 was about Ecology *over*-paying employees. *See Reed v. Brex, Inc.*, 8 F.4th 569, 580 (7th Cir. 2021) ("The [FLSA] do[es] not require us to find that an employer violates the Act by paying its employees more than necessary.").

For these reasons, the undisputed record establishes that Plaintiff did not engage in protected activity by complaining about overtime pay. *See Anderson*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[4]

---

[4] Because Ecology has shown a lack of protected activity for the reasons discussed above, the Court need not reach Ecology's other arguments that Plaintiff did not engage in protected activity because (1) he lacked a good faith basis to make the alleged overtime complaint because Plaintiff concluded that Mr. Haddaway and Mr. Lee worked overtime

### B. Plaintiff Also Fails to Establish Causation

On top of the absence of evidence of protected activity, Ecology is also entitled to summary judgment for another reason: even if Plaintiff engaged in FLSA-protected activity, no reasonable jury could conclude that this alleged protected activity caused Ecology to terminate his employment.

Under the *McDonnell Douglas* framework, which courts in this District have long concluded applies in FLSA retaliation cases, *see, e.g.*, *Mould*, 37 F. Supp. 3d at 778, once a plaintiff makes out a *prima facie* case, the burden shifts to the employer to "provide a legitimate, nondiscriminatory reason for the employment action." *Haynes*, 922 F.3d at 223. If the employer meets that burden, the burden shifts back to the plaintiff to "demonstrate that the defendant's proffered reason is pretextual." *Id*. The third prong of the burden-shifting framework requires a plaintiff to not only demonstrate that the legitimate nondiscriminatory reasons were false, s*ee Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011), but also that the plaintiff's protected activity was the "but-for" cause of the termination. *Mould*, 37 F. Supp. 3d at 778 n.11 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) and *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

Even if Plaintiff had established a *prima facie* case (which he did not, as discussed above) his claim would still fail under *McDonnell Douglas* steps 2 and 3. The undisputed evidence in the record demonstrates that Ecology had legitimate, nondiscriminatory reasons for terminating Plaintiff, including Plaintiff's violations of

---

solely based on his personal observations, and (2) the so-called "Manager Rule," as applied here, establishes that Plaintiff was reviewing payroll as part of his regular job duties. *See* ECF No. 36-1 at 18, 22, 23.

11

company policies by awarding himself extra pay, approving vacation requests at the last minute, and rehiring an employee who had failed a background check. *See* ECF No. 36-3 ¶¶ 20—25; *see also Cross v. Bally's Health & Tennis Corp.*, 949 F. Supp. 883, 887—89 (holding that the plaintiff's violation of the defendant's attendance policy by being late four times in 90 days provided the defendant with a legitimate nondiscriminatory reason for termination).

And Plaintiff offers no evidence to suggest that these legitimate reasons were pretextual. The only evidence in the record that could possibly be construed as an allegation of pretext is one interrogatory answer. When asked for the basis of his allegation that he was terminated "solely" for his alleged FLSA complaints, Plaintiff responded, "Carl Thomas had no disciplinary write-ups, not verbal nor written. After discussing the concerns of payroll and overtime hours with Mel Morales, HR, & Kerry Wellington, Carl Thomas was terminated days later." ECF No. 36-22 at 6. Not only does this response, and the record as a whole, fail to rebut Defendant's legitimate nondiscriminatory reasons for termination, s*ee Adams*, 640 F.3d at 560, but it also does not constitute evidence from which a reasonable jury could find that Plaintiff would not have been terminated but for his alleged payroll complaints. *See Mould*, 37 F. Supp. 3d at 778.

Accordingly, in addition to failing to establish that he engaged in protected activity, Plaintiff has not come forward with evidence sufficient to establish causation.

### IV.   CONCLUSION

For these reasons, there is no genuine dispute as to any material fact that would entitle Plaintiff to proceed with his FLSA retaliation claim. Accordingly, this Court will grant summary judgment in favor of Defendant Ecology. A separate order follows.

Date:  July 25, 2025

                    /s/
Adam B. Abelson
United States District Judge